## NATIONAL LABOR RELATIONS BOARD v. POLSON LOGGING CO.

### No. 10342.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1943

Robert B. Watts, Gen. Counsel, N. L. R. B., Ernest A. Gross, Associate Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel., and Roman Beck and Platonia P. Kaldes, Attys., N. L. R. B., all of Washington, D. C., for petitioner.

R. W. Maxwell, of Seattle, Wash., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The Board seeks our enforcement of its order that respondent cease and desist from (a) discouraging membership in the Brotherhood of Railway Trainmen, hereinafter called the Brotherhood, or any other labor organization of its employees, by laying off, discharging, refusing to reinstate them or otherwise discriminating against them in regard to their hire or tenure of employment; (b) from otherwise interfering with, coercing or restraining its employees in the exercise of their right guaranteed by § 7 of the National Labor Relations Act, 29 U.S.C.A. § 157; and that respondent take affirmative action (c) by offering reinstatement to two discharged railway employees and (d) make good their back pay, with the usual requirement for the posting of notices.

Respondent corporation is engaged in felling timber and transporting logs by rail from its forests. It is not questioned that it is engaged in interstate commerce.

Respondent's employees, both loggers and trainmen, had been organized in the Carpenters and joiners of America, an affiliate of the American Federation of Labor. After a prolonged strike, they transferred their allegiance to the International Woodworkers of America, an affiliate of the Congress of Industrial Organizations, which became the bargaining agent of all the men. In 1940, certain railway employees sought to effect an organization of the railway men in one of the railway Brotherhoods. There is substantial evidence that respondent's manager and assistant superintendent, in charge of railway operations, were strongly opposed to such an organization as likely to cause labor struggle between the A. F. of L. and C. I. O. interests, with the consequent interference with log production.

The assistant superintendent suggested to certain railway employees that one C. B. Groves, one of the organizers, was a "trouble maker." Groves was threatened with discharge by his camp foreman, Vic Lehman, who had the power to "hire and fire," and told Groves, "I just want to say you had better be careful what you say about the Brotherhood; somebody is going to be let out, and it might be you."

█ There was also testimony that the assistant superintendent stated to a railway employee that the Brotherhood movement would lead to a shut down and also to a cessation of respondent's railway operations which would be taken over by the Northern Pacific Railway. We hold that there is substantial evidence of a violation of § 8(1) of the Act, 29 U.S.C.A. § 1.58(1), prohibiting interference and restraint in the self-organization for the purpose of

collective bargaining, and warranting the cease and desist orders (a) and (b).

 Respondent discharged two railway employees, Lytle and Reece. Lytle was an active leader in the railway organizational movement. Reece was secretary of the trainmen's executive committee. Both had been employed as railway brakemen by respondent for substantial periods—Lytle for several years; Reece for over a year. They were discharged for the purported reason that they had violated a safety rule requiring them to stand on the forward end of a flat car ahead of the locomotive of a logging train, when it was about to cross a highway.

There was evidence from which the Board could infer that the men, who were inside the housing on the rear of the car, as well could have made the crossing safe from the position in which they stood and from which they had a clear view of vehicles on the highway approaching the crossing, and that there was but a technical violation of the rule.

There was also evidence from which the Board could infer that the purpose of the discharge of the two organizers, rather than a reprimand or a short lay-off, was to coerce, by such discrimination, the other railway employees seeking to organize the Brotherhood.

Reece, as spokesman for the railway employees, had presented to respondent's general manager their request for the recognition of the Brotherhood. The general manager expressed his opposition. Three days later, Lytle and Reece were assigned to a braking crew whose duties would require them to be on the front of the flat car on crossing the highway. The assistant superintendent, who, from prior experience, well could have expected the men to stay in the housing and not go to the end of the car, drove from the company camp to and across the crossing and stopped his automobile there just before the approach of the logging train. No other automobile was in sight and no one on the highway could have been in danger. The assistant superintendent observed that Lytle and Reece did not come to the end of the car and immediately returned to the camp where he reported the matter to the general manager. The next morning the two men were laid off and shortly thereafter discharged.

We hold that the Board had reasonable ground to infer that the assignment of the men to the particular train, shortly after Lytle's demand for Brotherhood recognition, the purposeful follow-up of the superintendent for the expected minor infraction of the rule, and the drastic punishment of the discharges were discriminatory acts in violation of § 8(3) of the Act and were purposed to remove the men—not for the good of the operation,—but to prevent their and their companions' further organizing activities.

The petition of the Board for the enforcement of its order is granted.

Affirmed.